### KIRKPATRICK v. AMERICAN ALKALI CO.

(Circuit Court, D. New Jersey. August 21, 1905.)

1. CORPORATIONS—PREFERRED STOCKHOLDERS—LIABILITY FOR ASSESSMENTS UNDER NEW JERSEY STATUTE.

The provision of the New Jersey general corporation act (P. L. 1896, p. 283, c. 185, § 18) that "in no event shall a holder of preferred stock be personally liable for the debts of the corporation, but in case of insolvency its debts or other liabilities shall be paid in preference to the preferred stock," does not affect the liability of preferred stockholders to calls and assessments made by the directors, or the court in case of insolvency, for unpaid installments up to the par value of the stock, to which such stockholders are subject under sections 21 and 22 of the act (P. L. 1896, p. 284), equally with holders of common stock.

2. SAME—PETITION OF RECEIVER FOR ASSESSMENT—SUFFICIENCY.

A petition by the receiver for an insolvent corporation for an order making an assessment on stockholders, on account of unpaid installments of stock, under the law of New Jersey, should set out the facts showing the necessity for the assessment, and from which the court can determine judicially the amount probably needed to pay the debts of the corporation. Such a petition considered, and *held* sufficient to authorize an assessment.

In Equity. On petition and rule to show cause why assessment should not be levied on preferred stockholders.

See 135 Fed. 230.

Reynolds D. Brown, for petitioner.

Harry E. Kohn, for respondent Liveright.

Clement B. Wood, for respondents Robert E. Glendinning & Co. and Ross Henderson & Co.

LANNING, District Judge. By the petition of Arthur K. Brown, receiver of the American Alkali Company, it appears that he has converted into money all the assets of the insolvent company, and now has in hand in cash the sum of $42,200. The liabilities of the company, as stated in the petition, are as follows:

| | |
|---|---:|
| Undisputed claims | $ 11,970 04 |
| A judgment recovered by Thomas Pegram on a note of the company which the holder thereof assigned to Pegram as collateral to secure a debt of $20,000 | 52,887 45 |
| Taxes due the state of New Jersey for 1903 and 1904 | 10,500 00 |
| Henry G. Morris | 10,000 00 |
| Pedro G. Salom | 10,000 00 |
| Preferred stockholders, to reimburse them for second and third installments of assessment made by board of directors September 12, 1901, and paid by them before appointment of receiver | 11,537 50 |
| Total | $106,894 99 |

The receiver alleges in his petition that on September 12, 1901, an assessment of $10 per share, payable in four installments of $2.50 each, was levied upon the preferred stockholders by the directors; that before his appointment the first, second, and third installments had been collected from a part of those stockholders; that after his appointment he was directed by the order of this court to collect from the delinquents the first installment of $2.50; that he commenced a number of suits and collected the sum of $52,493.80; that there are in all 120,000 shares of preferred stock; that he has been unable to collect anything upon 79,327 shares, owing in large measure to technical defenses, which he thinks would disappear if the court should make an order imposing an assessment of $2.50 per share upon the stock of these delinquents, instead of leaving him to prosecute still further his efforts to collect the first installment of the assessment made by the directors on September 12, 1901; that he believes, after diligent inquiry, that of the 79,327 shares 9,000 shares stand in the names of irresponsible dummies, and that the expense of ascertaining the real owners in such cases will be so great as probably to net for the creditors but a very small sum; that 40,000 shares are held by persons who are insolvent; that of the holders of the remaining 30,327 shares he has no definite information, but he believes it unsafe to assume that collections can be made upon more than 20,000 shares; and that he believes an order authorizing an assessment of $2.50 per share will produce a fund which, with the $42,200 now on hand, will not be more than sufficient to pay the debts of the company and the expenses of the receivership. He prays for such an order. Max Liveright, Robert E. Glendinning & Co., and Ross Henderson & Co., preferred stockholders, have filed answers to the receiver's petition, insisting that preferred stockholders, by virtue of the provisions of the general corporation act of New Jersey, under which the American Alkali Company was incorporated, are exempt from calls and assessments upon their stock to pay debts of the company, and that, if this be not so, still the aggregate amount of the debts of the company and the number of shares on which collections can be made have not been ascertained with that degree of certainty that will justify the order prayed for.

First, then, does the general corporation act of New Jersey exempt preferred stockholders of an insolvent corporation from assessments upon their stock for the purpose of raising funds with which to pay the debts of the corporation? The respondents base their contention upon the provisions of section 18 of that act (P. L. 1896, p. 283, c. 185), the prototype of which is found in section 1 of the act entitled "An Act Concerning Manufacturing Corporations;" approved March 22, 1860. See P. L. N. J. 1860, p. 603, c. 228. Before quoting from either of those sections, it should be observed that in 1860 there were several hundred manufacturing corporations which had been created under special acts of the Legislature of New Jersey. A list of them may be found on pages 525 to 544 of Hood's Index to the Laws of New Jersey. A considerable number of these special acts imposed on stockholders personal lia-

bility of one kind and another for corporate debts. Some of them are here referred to. Section 5 of the charter of the New England Manufacturing Company of South Trenton (P. L. 1842, p. 101) provided that:

"The amount of capital stock hereinbefore prescribed to be paid in before the company goes into operation shall be paid bona fide, and not in notes or obligations, whether secured by pledge of stock or otherwise, and so of any increase of capital thereafter made; and no part of the capital stock shall be withdrawn and refunded to the stockholders, until all the liabilities of the said company are discharged; and in case of any violation of any of the provisions of this section, the stockholders in said company shall be liable, jointly and severally, for all debts previously contracted by the company."

Section 6 of the charter of the Trenton Improvement Company (P. L. 1844, p. 266) provided that:

"The debts of the said corporation shall at no time be suffered to exceed the capital stock actually paid in and in case of any violation of the provisions of this section, the president, directors, and stockholders shall be personally liable in their own estate jointly and severally for all debts of the company previously contracted and then unpaid."

Section 10 of the charter of the Somerset Cotton Mill Company (P. L. 1845, p. 207) provided that:

"All the stockholders of this company shall be jointly and severally liable for all debts and contracts made by said company, until fifty thousand dollars of the capital stock shall have been paid in or satisfactorily secured."

And section 11 of the same charter, after setting forth provisions for the voluntary dissolution of the corporation, declared that:

"In case of any violation of the provisions of this section, the president, directors, and stockholders of this corporation shall be personally liable, in their own estate, jointly and severally, for all debts previously contracted and due from said company."

Sections 10 and 11 of the charter of the Somerville Woolen Company (P. L. 1845, p. 223) contained the same provisions as those of sections 10 and 11 of the Somerset Cotton Mill Company.

In 1846 the Legislature passed a general act concerning manufacturing corporations (P. L. 1846, p. 64), the nineteenth, twenty-fourth, and twenty-fifth sections of which were:

"Sec. 19. That all the stockholders of every manufacturing company established under this act shall be jointly and severally liable for all debts and contracts made by such company, until the amount of the capital stock, from time to time fixed and limited by the company in manner aforesaid, shall have been paid in, and a certificate thereof shall have been made and recorded in the clerk's office and published, as prescribed in the following section."

"Sec. 24. That if any part of the capital stock of said company shall be withdrawn and refunded to the stockholders, before the payment of all the debts of the company contracted previously to the recording and publishing of a copy of a vote for that purpose, as prescribed in the preceding section, all the stockholders of the company shall be jointly and severally liable for the payment of the said last mentioned debts.

"Sec. 25. That every such company shall give notice in the month of January, annually, in some newspaper circulating in the county where the manufactory is established, of the amount of stock actually paid in, and the amount of existing debts, and amount of all the assets of said company deemed good, which notice shall be signed by the president and a majority of the directors, and verified by their oaths or affirmations; and if any of the said companies shall fail so to do, all the stockholders of the company shall be jointly and severally liable for all the debts of the company then existing, and for all that shall be contracted before such notice shall be given."

The general act of 1846, except as to companies organized under its provisions, was repealed in 1849 by section 45 of the act entitled "An act to authorize the establishment and to prescribe the duties of companies for manufacturing and other purposes." That section (see P. L. 1849, p. 309) was as follows:

"That 'An act to authorize the establishment and to prescribe the duties of manufacturing companies,' approved February 25, 1846, be and the same is hereby repealed; but no company established under the said act, or any person having claims or demands against said company shall be affected by the repeal thereof."

An examination of the list of certificates of corporations filed in the office of the Secretary of State of New Jersey, and published by him in 1895, shows that some corporations were organized under the act of 1846 before its repeal. As to them the act of 1846 continued to be their governing law. Such being the obligations imposed upon stockholders in a number of these specially created corporations and in corporations organized under the general act of 1846, the Legislature, in the act of March 22, 1860, by which it for the first time provided for the issue of special or preferred, as distinguished from general or common stock, declared that:

"*Any* corporation *which is now*, or that may be hereafter, established by or under the laws of this state for the purpose of carrying on any kind of manufacture, shall have power to create and issue certificates for two kinds of stock, namely: general stock and special stock; that the special stock shall at no time exceed one-half the actual capital paid in, and shall be subject to redemption, at par, at a fixed time to be expressed in the certificates therefor; and the holders of such special stock shall be entitled to receive, and the said corporation shall be bound to pay thereon, a fixed half yearly sum or dividend, to be expressed in the said certificate, not exceeding four per cent., before any dividend shall be set apart or paid on the said general stock; *and in no event shall the holders of such special stock be individually or personally liable for the debts or other liabilities of said corporation;* provided always, that no such corporation shall create or issue certificates for such special stock, except by authority given to the board of directors thereof, by a vote of at least two-thirds of the stock voted at a meeting of the general stockholders duly called for that purpose."

The italicized words, taken in connection with the obligations to pay debts theretofore imposed upon the stockholders of various corporations, show clearly that the purpose of those words was, not to exempt the holders of special stock from calls or assessments thereon up to the par value thereof, but to exempt them only from the additional liability above mentioned imposed upon the holders of general stock. The act of 1860 was silent as to the rights of the holders of special stock in case of corporate insolvency. When the corporations act was revised in 1875 (Revision N. J. 1877, p. 181), these rights were made clear by the declaration in section 25 of the revised act that:

"In no event shall the holder of such preferred stock be individually or personally liable for the debts or other liabilities of said company; but in case of insolvency such debts or other liability shall be paid in preference to such preferred stock."

In section 18 of the general corporations act of 1896 (P. L. 1896, p. 283, c. 185), the one under which the American Alkali Company was incorporated, the language is:

"And in no event shall a holder of preferred stock be personally liable for the debts of the corporation; but in case of insolvency its debts or other liabilities shall be paid in preference to the preferred stock."

The exemption of the holders of preferred stock under the act of 1896 is none other than the exemption conferred on them by the act of 1860. This conclusion is confirmed by the provisions of sections 21 and 22 of the act of 1896. Section 21 provides that:

"Where the *whole capital* of a corporation shall not have been paid in, and the capital paid shall be insufficient to satisfy its debts and obligations, *each stockholder* shall be bound to pay on *each share* held by him the sum necessary to complete the amount of such share, as fixed by the charter of the corporation, or such proportion of that sum as shall be required to satisfy such debts and obligations."

And section 22 provides that:

"The directors of every corporation may, from time to time, make assessments *upon the shares of stock subscribed for,* not exceeding, in the whole, the par value thereof; and the sums so assessed shall be paid to the treasurer at such times and by such installments as the directors shall direct, said directors having given thirty days' notice of the assessment and of the time and place of payment either personally or by mail or by publication in a newspaper published in the county where the corporation is established."

The contention of the respondents cannot be sustained. The holders of preferred stock are liable for calls and assessments in the same manner as the holders of common stock. Section 18 exempts a holder of preferred stock from personal liability in a suit by or on behalf of a creditor of his corporation for a debt due from the corporation, but not from personal liability in a suit by a corporation or its receiver for unpaid capital due to the corporation.

The second objection of the respondents is that neither the unsatisfied debts of the American Alkali Company nor the number of shares of stock on which assessments may be collected has been ascertained with that degree of certainty necessary to justify the making of the order prayed for. It is settled by judicial construction that, before making an order to enforce the stockholders' obligation mentioned in section 21 above quoted, there must be a judicial determination of the proportion of unpaid subscriptions probably needed to pay the debts of the corporation, and that the assessment ordered must be confined to such proportion. Cumberland Lumber Co. v. Clinton Hill Lumber Mfg. Co., 57 N. J. Eq. 628, 42 Atl. 585.

The liabilities of the American Alkali Company to the extent of $11,970.04 are not disputed. The respondents insist that the Pegram judgment is valid against the receiver only for the amount of $20,000, with accrued interest. But the judgment is based on a note of the company, and if the company's receiver has an equitable set-off or other claim against Pegram's debtor, to whom the note was originally given, the present is not an opportune time for settling that question. For present purposes the claim should be considered as a valid one for the full amount of the judgment, being $52,887.45. The state taxes amounting to $10,500 must at present be considered valid, notwithstanding their validity is denied by the respondents. The petition shows that the company was dissolved

by the Court of Chancery of New Jersey on December 6, 1904. As these taxes became due before that date, they must be paid, if the decision of the New Jersey Court of Errors and Appeals in the United States Car Company's Case, 60 N. J. Eq. 514, 43 Atl. 673, is to be followed in this court. The claims of Henry G. Morris and Pedro G. Salom are based on subscriptions to preferred stock which they aver they were induced to make and pay by reason of fraudulent representations. Their validity should be established before they are included in the estimate of the amount necessary to be provided for by an assessment upon stock. The same is true of the claim of $11,537.50 in favor of preferred stockholders. Deducting from the total debt of $106,894.99, as given by the receiver, the above claims of Morris, Salom, and the preferred stockholders, there remains $75,357.49, representing the total claims of creditors of the company. This remainder, with interest and the costs of the receivership, will probably make it necessary for the receiver to have in hand not less than $90,000 or $95,000. If assessments can be collected from only 20,000 shares, a rate of $2.50 per share, with the $42,200 now in hand, will place in the receiver's hands $92,200. It is not possible now to ascertain the number of shares on which collections can be made. Very probably that can be done only after a number of suits shall have been pressed to judgment. I think the receiver is wise in assuming that the number may not exceed 20,000.

None of the defects in the receiver's previous petition (135 Fed. 230) are found in the present petition, and my conclusion is that an assessment of $2.50 per share should be made. Such will be the order.